**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GLATT AIR TECHNIQUES, INC. | Civil Action No.: 06-5614 (PGS) |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| VECTOR CORPORATION | |
| Defendant. | |

**SHERIDAN, U.S.D.J.**

Plaintiff, Glatt Air Techniques, Inc. ("Glatt") has filed a patent suit against defendant, Vector Corporation ("Vector") for allegedly infringing its patent rights. Glatt owns U.S. Patent No. 5,236,503 ("'503 Patent"), which is an improvement for a Wurster type fluidized bed coater device that is used to coat particles, such as pharmaceutical capsule ingredients, by spraying the coating onto particles circulating within the device. Typically during the coating process, agglomeration occurs because particles are prematurely entering into the spray pattern before the spray pattern has fully developed. Specifically, this premature entry causes the particles to become overly wet and stick together and thereby creates blockages within the device and extends the processing time. Glatt's claimed invention is an improvement to be used in a Wurster type coater device that shields the spray nozzle to prevent particles from prematurely entering into the spray pattern. Glatt asserts that Vector's device, the Vector Accelerator, performs the same shielding function as described in the '503 Patent. Vector contends that Glatt's '503 Patent is invalid for several reasons, and the

1

court's construction of the Patent's claims will demonstrate that there is no infringement.  The  issue

presently before the Court is the parties' request for claim construction of the '503 Patent.  The Court

held a *Markman* hearing on November 3, 2011, and this opinion addresses the proper construction

of the disputed terms within Claim 5 and Amended Claim 8 of the '503 Patent.

## I.      STANDARDS FOR CLAIM CONSTRUCTION

There is a two-step analysis for determining patent infringement: "first, the court determines

the meaning of the disputed claim terms, then the accused device is compared to the claims as

construed to determine infringement."  *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 804 (Fed. Cir.

2007) (citation omitted).  When the court engages in claim construction to determine the meaning

of disputed claim terms, it is decided as a matter of law.  *Markman v. Westview Instruments*, 517

U.S. 370, 372 (1996).  It is well established that "[T]he construction of a patent, including terms of

art within its claim, is exclusively within the province of the court."  *Id.*

When construing claims, the court must focus on the claim language.  As explained by the

Federal Circuit:

> It is a bedrock principle of patent law that the claims of a patent
> define the invention to which the patentee is entitled the right to
> exclude.  Attending this principle, a claim construction analysis must
> begin and remain centered on the claim language itself, for that is the
> language the patentee has chosen to particularly point out and
> distinctly claim the subject matter which the patentee regards as his
> invention.

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1115-16 (Fed. Cir. 2004)

(citations omitted).  When looking at the words of a claim, the words "are generally given their

ordinary and customary meaning," which has been defined as "the meaning that the term would have

to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).

The Federal Circuit has counseled:

> It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed. Such person is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning usage in the field. The inventor's words that are used to describe the invention – the inventor's lexicography – must be understood and interpreted by the court as they would be understood and interpreted by a person in that field of technology. Thus the court starts the decision making process by reviewing the same resources as would that person, viz., the patent specification and prosecution history.

*Id.* at 1313 (quoting *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998)). Those resources, called intrinsic evidence, include the claim language, the specification, and the prosecution history. *See id.* at 1314.

However, when intrinsic evidence alone does not resolve the ambiguities in a disputed claim term, extrinsic evidence – evidence that is outside the patent and prosecution history – may also be used to construe a claim. *See id.* at 1317; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed. Cir. 1996). "[E]xtrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art" may be consulted; for example, expert testimony, dictionaries, and treatises. *Id.* at 1314. However, when a court relies on extrinsic evidence to construe a claim, the court should be guided by the principle that extrinsic evidence may never conflict with intrinsic evidence, because courts "have viewed extrinsic evidence in general as less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* at

3

1319. Thus, a court should take care to "attach the appropriate weight to be assigned to those sources." *Id.* at 1322-24.

## II.    THE DISPUTED CLAIM TERMS

### A.    Claim 5

The parties are in dispute regarding several terms within Claim 5. Claim 5 of the '503 Patent reads,

> In a fluidized bed coater having a product container opening upwardly into an expansion chamber and downwardly into a lower plenum chamber through an air distribution plate/screen having openings formed therethrough for upward air flow from said lower plenum chamber into said product container, said product container including a substantially cylindrical partition spaced above said air distribution plate/screen for defining an inner upbed area and an outer downbed area, and an upwardly discharging spray nozzle mounted substantially centrally within said cylindrical partition, the improvement comprising shielding means positioned adjacent said spray nozzle for shielding the initial spray pattern developed by said nozzle against the entrance of particles moving upwardly through the upbed. '503 Patent. Cl. 5 (emphasis added).

### 1.    Term 1 – "shielding means"

A claim limitation containing the term "means" is presumptively subject to a means plus function analysis under 35 U.S.C. § 112 ¶ 6. *Linear Technology Corporation v. Impala Linear Corporation*, 379 F. 3d 1311, 1319 (Fed. Cir. 2004). The parties have also agreed that this term is in a means plus function format under 35 U.S.C. § 112 . The statute provides that

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Construction of means plus function language requires a two step analysis. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322 (Fed. Cir. 2003); *Somfy, S.A. v. Springs Window Fashions Div., Inc.*, 6 Fed. Appx. 895, 896-97 (Fed. Cir. 2001). First, the court must identify the claimed function. *Omega,* 334 F.3d at 1332. Second, the court must determine the corresponding structures disclosed in the specification that perform the claimed function. *Id.* The parties are in agreement that the "shielding means" claimed function is "for shielding the initial spray pattern developed by said nozzle against the entrance of particles moving upwardly through the upbed." '503 Patent cl. 5. The parties are in dispute regarding the corresponding structures for "shielding means."

Glatt argues that the specification describes two distinct structures that perform the claimed function:

1.      A sleeve [or partition] positioned adjacent the spray nozzle and connected to a source of air to form an air flow that surrounds the initial spray pattern;

2.      A deflector or shield formed integrally with the spray nozzle and configured to shield the initial spray pattern from particles moving upwardly through the upbed.

According to Vector, the specification describes three separate structures:

1.   "an inner cylindrical partition 40;"

2.  "An air wall or stream that surrounds the nozzle;" or

3.  "A deflector or shield that may be formed integral with the spray nozzle itself."

Generally, a structure is corresponding to a function "only if the specification or the prosecution history clearly links or associates that structure to the function recited in the claim. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322 (Fed. Cir. 2003). The means plus function limitation

5

covers both distinct and alternative structures. *Creo Prods., Inc. v. Presstek, Inc.*, 305 F.3d 1337, 1344 (Fed. Cir. 2002). To determine the structures, the court must "consider the specification as a whole, and to read all portions of the written description, if possible, in a manner that renders the patent internally consistent." *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1370-80 (Fed. Cir. 2001).

Glatt and Vector both rely on Figures 1 and 2 of the Patent in support of their respective structures. The brief description of the drawings provides that the figures illustrate the "mounting of an inner tubular partition about the spray nozzle." '503 Patent col. 3 ll. 25-35. However, the figures alone do not illustrate all of the possible structures described in the specification.

The only description of potential "shielding means" structures is included within the specification's "preferred embodiment," which states

> In addition, although the shielding of the spray nozzle is preferably provided by an inner cylindrical partition 40, other shielding arrangements may be utilized. For example, shielding of the spray nozzle may be accomplished by formation of an air wall or stream that surrounds the nozzle and prevents particles from prematurely entering into the spray pattern. Alternatively, a deflector or shield may be formed integral with the spray nozzle itself to prevent particles from interfering with the developing spray pattern.
> '503 Patent col. 5 ll. 3-12.

In reviewing Glatt's structures, the use of the word "sleeve" is curious. Neither the specification nor any other intrinsic or extrinsic evidence supports Glatt's proposed construction of a "sleeve." The specification consistently refers to a "cylindrical partition" as a possible structure, but the specification never describes a "sleeve" as a possible structure, nor can it be interpreted from any of the language used in the specification. On the other hand, Vector's

proposed structures are missing the required "up flow of air" as the Patent teaches, and as argued by Glatt.

The term, "shielding means," is also described in the specification's "summary of the invention,"which provides

> Accordingly, the present invention introduces a **shielding or barrier means** around the lower portion of the nozzle, within the upbed, for shielding the nozzle and allowing up flow of air within the shielding means around the nozzle. '503 Patent col. 2 ll. 42-46. (emphasis added).

The specification further defines the manner in which the "shielding means" performs its claimed function in the "summary of the invention":

> Another object of this invention is to provide **an apparatus** by which particles to be coated are prevented from entering the spray pattern . . . '503 Patent col. 2 ll.62-64. (emphasis added).

> Yet another object of the invention is to provide **a columnar shield** of upwardly moving air about the lower portion of the spray pattern formed by a spray nozzle of a Wurster system processor and wherein the shield may be adjusted vertically according to the spray pattern being discharged and the air flow velocity of the processing air. *Id.* col. 2 ll. 67-68 - col. 3 ll. 1-5. (emphasis added).

Upon review of the specification's language, it is apparent that a physical structure around the lower portion of the spray nozzle, such as an "apparatus," plus a "columnar shield of upwardly moving air" together act as a "shielding means." However, the Patent does not require the structure to be cylindrical, as Vector argues, but provides that an inner cylindrical partition is preferred. Furthermore, the specification makes no reference to either an air wall or stream without a physical structure as a possible "shielding means." For the Patent to remain internally

7

consistent, an air wall or stream would need to be combined with a physical structure that together performs the claimed function. The Patent also teaches that the shield "may be adjusted vertically," which further reinforces that a physical structure is required, and an air wall or stream alone cannot be a possible structure. Thus, the Court concludes that one such structure for the "shielding means" is an inner partition within which there is an up flow of air.

There appears to be no real dispute between the parties that one such structure for the "shielding means" is a deflector or shield formed integrally with the spray nozzle. This structure is not expressly defined in the Patent, but one skilled in the art may define a structural reference in the specification. *Creo Prods., Inc. v. Presstek, Inc.*, 305 F.3d 1337, 1347 (Fed. Cir. 2002). Glatt relies on extrinsic evidence to argue that a deflector is a well known structure to one skilled in the art at the time the '503 Patent was filed. Specifically, Glatt refers to *Van Nostrand's Scientific Encyclopedia* 845 (1989), which establishes various definitions of a deflector including "[a] plate, baffle, or the like that diverts something in its movement or flow, as: (a) a plate that projects into the airstream on the underside of an airfoil to divert the airflow, as into a slot-sometimes distinguished from a spoiler." Glatt argues that the scientific definition combined with the disclosures of the Patent as a whole both define a deflector as a distinct structure for the "shielding means."

<u>Claim Construction</u>

Based on the above analysis, the Court finds that the specification suggests two possible structures: (1) an inner partition within which there is an up flow of air; and (2) a deflector or shield that may be formed integral with the spray nozzle itself". The Court rejects Glatt's

"sleeve" as a proposed structure since a "sleeve" is not referenced in the specification.  Vector's "inner cylindrical partition" structure is rejected as too narrow, and Vector's "air wall or stream" without a physical structure is also rejected.

### 2.    Term 2- "positioned adjacent said spray nozzle"

Within Claim 5, the term "positioned adjacent said spray nozzle" is also in dispute. Glatt argues that this term means "placed close to or next to the spray nozzle."  On the other hand, Vector argues that this term means "located at or higher than the upper extremity of the spray nozzle assembly."

As required, the intrinsic evidence will be considered first.  Both parties rely on Figure 1 and Figure 2 in the '503 Patent to support their proposed claim construction.  Both figures show that partition 40 is both close to and higher than the spray nozzle. However, looking at the figures alone does not closely evidence the meaning of the word "adjacent."

Both parties also rely on the language within column 4, ll 18-53 to define the disputed term.  The relationship of the upper end of the shielding means to the spray nozzle is not defined in that language. At one point, the language describes "an inner cylindrical partition  disposed about the upwardly projecting spray nozzle assembly 32". '503 Patent col. 4, ll 19-20.  This language (disposed about) suggests closeness of the partition 40 which surrounds spray nozzle 32; but it does not specifically state that the nozzle and the partition are the same height or that partition 40 must be at the top of the spray nozzle as Vector contends.  Moreover, in reading through column 4 of the '503 Patent, it indicates that "the height of the upper end of the inner cylindrical partition 40 relative to the upper extremity of the spray nozzle assembly 32 may be

adjusted." Col. 4, ll 50-53. The use of the word "adjusted" connotes that there is a degree of variability in setting the inner cylindrical partition 40 in relation to the spray nozzle assembly 32. As such, the inner cylindrical partition 40 may be set either above or below "the upper extremity" of the spray nozzle for certain reasons.

The language in column 5, ll. 3-12 reads that a "deflector or shield may be formed integral with the spray nozzle itself. . ." This language does not suggest that the shielding arrangement is the same height or higher than the spray nozzle assembly. The use of the word "integral" is vague, and does not suggest that the height of the inner partition 40 is the same or higher than the spray nozzle assembly.

Vector relies on column 6 ll. 7-13 in support of its narrow construction of "adjacent" to mean "at or higher than the upper extremity of the spray nozzle." The language reads in relevant part that the "cylinder partition mounted on the bottom plate and extending up 0.5" above the nozzle port height." As discussed earlier, the test procedures within the specification described that the partition height was adjusted during the coating trials, which suggests that the partition is not always above the "upper extremity" of the spray nozzle. '503 Patent col. 45-53.

Claim Construction:

Based on the analysis above, the Court adopts Glatt's construction of "positioned adjacent said spray nozzle" to mean "placed close to or next to the spray nozzle." From reading the '503 Patent it is clear that a person of ordinary skill in the art would understand that the shielding means must be placed close to or next to the spray nozzle. This definition allows for adjustment in setting the shielding means relative to the spray nozzle. The dictionary definition of

"adjacent" as "close to" or "next to" (extrinsic evidence) also most aptly fits with the intrinsic evidence as set forth in the '503 Patent.  *The American Heritage Dictionary* 22 (3d ed. 1992). Hence, using the language of the specification along with extrinsic evidence (dictionary definition) is necessary to understand the word "adjacent."  This process is also sufficient to determine the proper construction of the disputed word "adjacent."  *Optical Disc Corporation v. Del Mar Avionics* , 208 F. 3d 1324, 1334 (Fed. Cir. 2000).

### 3.      Term 3- "shielding"

Glatt argues that "shielding" should be construed as "substantially preventing or diverting the particles from moving into the initial spray pattern."  Vector argues that shielding should be construed as "providing a barrier or prevention means."

Both parties argue that Figures 1 and 2 support their definitions.  However, the figures alone do not establish that "shielding" is "substantially preventing or diverting the particles" as Glatt contends nor do they show that the shielding is "a barrier or prevention means" from particles entering the initial spray pattern as Vector contends.  Figures 1 and 2 demonstrate that there is an upward air flow within the partition, as illustrated by the four black arrows, that shield particles from entering the initial spray pattern, but the extent of the shielding cannot be determined from the drawings.  Thus, the language of the '503 Patent must be considered.

Both parties rely on various portions within the "summary of the invention" and the "description of the preferred embodiment" in support of their proposed constructions, which provide in relevant part,

> Accordingly, the present invention introduces a shielding or barrier
> means around the lower portion of the nozzle, within the upbed, for

11

> shielding the nozzle and allowing up flow of air within the shielding means around the nozzle. This ensures that particles, disposed in the product container outwardly of the barrier, are prevented from entering the spray pattern before the spray pattern is sufficiently developed. '503 Patent col. 2 ll. 42-29.

> A principal object of this invention is to shield the spray discharging nozzle of a Wurster type fluidized bed processor. The shield prevents the entry of particles into the spray pattern before the spray pattern has had an opportunity to develop. *Id.* col. 2 ll. 57-61.

> Another object of this invention is to provide an apparatus by which particles to be coated are prevented from entering the spray pattern until such time as the droplet density of the spray pattern has been substantially reduced. *Id.* col. 2 ll. 62-66.

> Yet another object of ths invention is to provide a columnar shield of upwardly moving air about the lower portion of the spray pattern formed by a spray nozzle . . . *Id.* col. 2 ll. 67-68 - col. 3 ll. 1-2.

> Yet another object of this invention is to provide a coating zone within the upbed of a Wurster system coater whereby the coating zone is protected by a surrounding column of upwardly moving air in order to allow the coating zone to more fully develop . . . *Id.* col. 3 ll. 11-15.

The Patent recognizes that even with the use of the invention, agglomeration of 1% can occur. *Id.* col. 7 ll. 5-17. In analyzing Glatt's proposed definition, it relies on the principle that the "shielding" does not prevent all particles from entering into the initial spray pattern.

The language also indicates that shielding occurs because there is both an apparatus in place, such as a partition or barrier, and there is a "columnar shield of upwardly moving air" to prevent particles from entering into the initial spray pattern. The word "partition" is used 55 times and the word "barrier" is used 17 times throughout the specification. This suggests that the Patent contemplates a partition or a barrier as the apparatus to perform the shielding. Together,

12

the barrier and column of air work together to prevent most of the particles from entering into the initial spray pattern.  Furthermore, Glatt's proposed construction of shielding as "substantially preventing or diverting" does not reflect a narrow meaning of the term. *See Becton Dickinson and Company v. C.R. Bard, Inc.*, 922 F. 2d 792, 799 (Fed. Cir. 1990).

Vector's definition of shielding as "providing a barrier or prevention means" concludes that a complete barrier is required to block all particles from entering the initials spray pattern.  In other words, Vector's definition precludes any agglomeration of particles.  However, this is not what the Patent teaches or suggests as the invention attempts to minimize agglomeration. Hence, Vector's definition is somewhat misleading.

Claim Construction

Based on the analysis above, the Court finds that Glatt's construction of "shielding" as "substantially preventing or diverting the particles from moving into the initial spray pattern" most accurately reflects that the invention attempts to minimize agglomeration by using a partition or barrier and a columnar shield of upwardly moving air to prevent particles from entering into the initial spray pattern.

### 4.  Term 4- "Initial Spray Pattern"

Glatt defines initial spray pattern as "the pattern of the liquid sprayed from the nozzle before it has been fully developed."  Vector defines the term as "the lower, beginning portion of the spray pattern near the nozzle's upper extremity and before the spray pattern is fully developed."

Both parties rely on column 4 ll. 35-53 to argue that their respective construction is more

concise and consistent with the descriptions within the Patent.  The specification states that

> [t]he spray nozzle assembly 32 discharges a spray pattern 56 of air and coating liquid.  Some of the air introduced into the lower plenum 16 passes upwardly through the openings 20 formed through the air distribution plate or screen 18 below the inner cylindrical partition 40.  The partition 40, as well as the tubular column of upwardly rising air about the spray nozzle assembly 32, shields the lower, beginning portion, of the spray pattern 56.  The particles 60, passing upwardly through the upbed 30, are not drawn into this spray pattern.  The annular column of air thereby allows spray pattern 56 to substantially develop, and the liquid droplet density of the spray pattern is substantially reduced before particles 60 enter into the spray pattern 56.  By adjusting the height of the inner cylindrical partition 40 relative to the tubular collar 42, the height of the upper end of the inner cylindrical partition 40 relative to the upper extremity of the spray nozzle assembly 32 may be adjusted.
> '503 Patent col. 4 ll.35-53.

Vector argues that its definition accurately describes where the shielding of the particles must take place ("the lower, beginning portion, of the spray pattern") and the shielding means needs to be positioned to shield particles from the spray discharged from the "upper extremity of the spray nozzle assembly 32."  Glatt contends that the "initial spray pattern" should not be defined in terms of where shielding is required to take place and the positioning of the shielding means.  Upon review of the language at column 4 ll. 35-53, Vector's definition directly incorporates this language, which adequately encompasses the meaning of the term, "initial spray pattern" as the patent writer envisioned.

<u>Claim Construction</u>

Based on the analysis above, the Court adopts Vector's definition for the "initial spray pattern" as "the lower, beginning portion of the spray pattern near the nozzle's upper extremity and before the spray pattern is fully developed."  Vector's definition does not conclusively

determine where the shielding means must be positioned, but it does explain the purpose of the invention, which is to shield  particles from entering into the lower, beginning portion, of the spray pattern once the liquid is discharged from the upper extremity of the spray nozzle assembly and before the spray pattern has fully developed, as described in the specification.

### 5.    Term 5- "against the entrance of particles"

Glatt states that "this term must be construed along with the phrase "shielding the initial spray pattern" to mean that the particles moving upwardly through the upbed are substantially prevented or diverted from entering the initial spray pattern."

Vector proposes that the term should be construed to mean "where all particles are prevented from coming into or separated from intruding into . . ." the initial spray pattern. Vector's definition concludes that all particles are prevented from entering into the initial spray pattern, similar to its argument regarding the proper construction of "shielding."

Vector's proposed construction, which uses the term "separated from intruding into," is not consistent with the Patent language, which reads

> The particles 60, passing upwardly through the upbed 30, are not
> drawn into this spray pattern.  The annular column of air thereby
> allows spray pattern 56 to substantially develop, and the liquid
> droplet density of the spray pattern is substantially reduced before
> particles 60 enter into the spray pattern 56.
> '503 Patent col 4 ll. 43-48.

Vector's use of the words "separated," and "intruding" are far different from "not drawn into" as the specification expressly states.

Vector's construction relies on an absolute barrier so that all of the particles are prevented

from prematurely entering into the spray pattern. Similar to the discussion regarding the construction of "shielding" (term 3), Glatt's definition here accurately portrays that not all particles are prevented from prematurely entering into the initial spray pattern.  The test procedures within the specification state that "it is clear that limiting the contact of substrate with a developing spray pattern so that the particle surface is only exposed to spray in low droplet density areas of the spray pattern reduces the over wetting of substrate surface thereby reducing the rate of product agglomeration." '503 Patent col. 8 ll. 3-8. This test procedures conclude that the claimed invention is "reducing the rate of product agglomeration," which indicates that not all particles are prevented from entering into the initial spray pattern.

<u>Claim Construction</u>

Accordingly, Glatt's construction will be adopted because it is consistent with the Court's prior adoption of Glatt's construction for "shielding."  Vector's definition departs from the specification's language, and concludes that all particles must be prevented from entering into the initial spray pattern.  This conclusion is contrary to what the Patent teaches.  Thus, Glatt's construction that "this term must be construed along with the phrase "shielding the initial spray pattern" to mean that the particles moving upwardly through the upbed are substantially prevented or diverted from entering the initial spray pattern" accurately describes the term.

**B.     Amended Claim 8**

The parties are in dispute regarding several terms within Amended Claim 8 of the '503 Patent, as set forth in the Reexamination Certificate.  Amended claim 8 reads, "[t]he processor of claim 5 wherein said shielding means comprises a cylindrical shield surrounding said spray

16

nozzle, one end of said cylindrical shield disposed at a level substantially adjacent the outermost extremity of said spray nozzle."

### 1.    Term 1 – "cylindrical shield surrounding said spray nozzle"

Glatt's proposed construction for this term is "a cylindrical partition or sleeve which extends around the spray nozzle."  In contrast, Vector's proposed construction is that the term "adds to the shielding means structures of claim 5 the limitation wherein the above-identified corresponding structures must be shaped like a cylinder."

Claim 8 is dependent on claim 5 so that claim 8 incorporates all of claim 5's limitations, and adds the limitation that the "shielding means" described in claim 5 "comprises a cylindrical shield surrounding said spray nozzle."  Glatt contends that this term should not be construed under a means plus function analysis.  Glatt focuses on "comprises" to argue that it is a term of art used to name the essential elements, but other elements may be added without going beyond the scope of the claim.  *Genentech, Inc.v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997). Whereas Vector contends that the limitation in claim 8 is in a means plus function format due to the reference of "shielding means."  Vector argues that each of the corresponding structures for "shielding means" identified in claim 5 must be shaped like "a cylindrical shield."

In reading Claim 8, it is clear that the added limitation is a cylindrical shield surrounding the spray nozzle. There is no reason to change this straight forward language into a means plus function format.

Glatt's definition inserts the word "sleeve."  As previously discussed, the word "sleeve" is not used in the specification nor does the Patent infer that a "sleeve" is a possible structure for

the "shielding means." As such, it is not an acquired meaning. Glatt's definition also used the term "partition."  The term "partition" was replaced by the word "shield" in the revised Term 8. It makes no sense to contract the term in such a way when upon reexamination it was concluded that "shield" is a more appropriate term.  As such, the term partition has not been acquired. Since both definitions are wanting, the Court finds neither has been acquired. Moreover, the contested language (cylindrical shield surrounding said spray nozzle) is clear.

<u>Claim Construction</u>

The Court finds that no construction is necessary because the term "cylindrical shield surrounding said spray nozzle" is clear, and this limitation only restricts claim 8 and is not imposed on claim 5.

**2.      Term 2 – "disposed at a level substantially adjacent the outermost extremity of said spray nozzle"**

Glatt's proposed construction is that "one end of the cylindrical shield is positioned at a level that is mostly near the upper extremity of the spray nozzle."  Vector's construction is "one end of the cylindrical shield at a desired vertical position located at or near the tip or portion of the nozzle from which material is ejected."

Vector's construction uses the word "desired," which is too subjective to incorporate into a definition.  In addition, the term "located at" is different from the language of the disputed term where it reads "substantially adjacent to the outermost extremity." The language "substantially adjacent" suggests that the cylindrical shield may be vertically adjusted relative to the outermost extremity of said spray nozzle as discussed throughout the specification.  Whereas "located at,"

18

as Vector proposes, suggests a more precise placement of the cylindrical shield.  Vector's use of the word "near" conforms with the Court's adopted definition of "adjacent" in claim 5.  Glatt's use of the phrase "mostly near" adds little to the definition. Use of the word "near" is sufficient.

The "outermost extremity" is frequently referenced in the drawings and the specification as the "upper extremity" to describe the tip of the nozzle.  To remain consistent with the Patent's language, Glatt's construction of "upper extremity" will be adopted.

<u>Claim Construction</u>

Based on the above analysis, the Court finds that the proper construction is a combination of Glatt's and Vector's proposed meanings.  The claim is construed to read "one end of said cylindrical shield is positioned at a level that is near the upper extremity of the spray nozzle."

**III.    CONCLUSION**

The Court has reviewed the parties' submissions and has held oral argument on the disputed terms; and

IT IS on this 19th day of January 2012 **ORDERED** that the following disputed terms shall be constructed as follows:

**A.    Claim 5**

1.    Term 1- "shielding means"- is construed as "(1) an inner partition within which there is an up flow of air; and (2) a deflector or shield that may be formed integral with the spray nozzle itself."

2.    Term 2- "positioned adjacent said spray nozzle"- is construed as "placed close to or next to the spray nozzle."

3.    Term 3- "shielding"- is construed as "substantially preventing or diverting the particles from moving into the initial spray pattern."

19

4.      Term 4- "initial spray pattern"- is construed as "the lower, beginning portion of the spray pattern near the nozzle's upper extremity and before the spray pattern is fully developed."

5.      Term 5- "against the entrance of particles"- is construed as "along with the phrase "shielding the initial spray pattern" to mean that the particles moving upwardly through the upbed are substantially prevented or diverted from entering the initial spray pattern."

**B.      Amended Claim 8**

1.      Term 1- "cylindrical shield surrounding said spray nozzle" is clear.  No construction necessary.

2.      Term 2- "disposed at a level substantially adjacent the outermost extremity of said spray nozzle"- is construed as "one end of said cylindrical shield is positioned at a level that is near the upper extremity of the spray nozzle."

*s/Peter G. Sheridan*_____
PETER G. SHERIDAN, U.S.D.J.

January 19, 2012

20